[No. 12555-9-I.   Division One.   November 18, 1985.]

LAWRENCE RAYBURN, ET AL, *Appellants*, v. THE CITY
OF SEATTLE, ET AL, *Respondents*.

*Quentin Steinberg* and *Steinberg & Steinberg*, for
appellants.

*Douglas N. Jewett, City Attorney*, and *Philip Morten-
son, Assistant*, for respondents.

WILLIAMS, J.—Lawrence and Virginia Rayburn brought
this lawsuit against the City of Seattle and the Seattle
Police Pension and Disability Board alleging negligence and
the tort of outrage on the grounds that the Board denied
his claim for permanent mental disability. The defendants
moved for summary judgment, which was granted on the
following grounds: (1) the action was barred by RCW 4.16-
.130, the 2–year statute of limitations, (2) the defendants
were immune from the Rayburns' claim for damages, (3) a
prima facie case for the tort of outrage had not been dem-
onstrated against the Board, and (4) Virginia Rayburn had
not stated a compensable cause of action for the tort of

outrage.

Lawrence Rayburn began working as a Seattle police officer in October 1967. He attempted suicide in October 1977 because of his perceived inability to cope with job, marital and financial difficulties and on October 20, 1977, was granted temporary disability leave. The Pension Board then met to review Rayburn's disability status and among other evidence reviewed the reports from two psychiatrists. Rayburn's treating psychiatrist, Dr. Arnold Frank, stated in his report that Rayburn suffered personality problems which made him unable to handle stress; he also stated that these problems were not likely to improve. Dr. John Liebert, appointed by the Board to make a psychiatric evaluation of Rayburn, concluded that:

> Attempts to return him to administrative duties without supportive psychotherapy would be highly risky and very likely lead to an impulsive self–destructive action on his part.

Clerk's Papers, vol. 2, at 108.

After considering this evidence the Pension Board voted on March 1, 1978, to cancel Rayburn's disability leave and he returned to work in an administrative position. Within 2 weeks he again attempted suicide, this time with a loaded pistol at the Vashon Island ferry dock. On April 13, 1978, Rayburn was dismissed from the police department, and on May 24, 1978, filed with the Board a written application for disability retirement.

The Pension Board denied Rayburn's application for disability retirement in August 1978 but this decision was remanded for reconsideration in September 1978 by a Washington State Assistant Attorney General. Also, on August 21, 1978, the Washington Law Enforcement Officers and Fire Fighters Retirement Board issued an order of remand of the Pension Board's March 1, 1978 decision to terminate Rayburn's disability leave. Finally, on September 20, 1978, the Pension Board reconsidered and granted Rayburn disability retirement "not in the line of duty."

Rayburn initiated this lawsuit on January 22, 1981, bas-

ing it upon three causes of action: (1) the defendants were negligent in terminating his disability leave in March 1978; (2) the defendants acted outrageously in ordering him to return to work; and (3) the defendants acted outrageously in terminating his disability payments. Rayburn claimed as damages severe emotional distress, loss of income, medical and legal expenses and a criminal record resulting from his second suicide attempt.

■ The rule is that when adjudication within an administrative agency shares enough of the characteristics of the judicial process, the agency is absolutely immune from suits for damages. *Butz v. Economou,* 438 U.S. 478, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978); *Sellars v. Procunier,* 641 F.2d 1295 (9th Cir.), *cert. denied,* 454 U.S. 1102 (1981). The Police Pension Board operates pursuant to RCW 41.20 and RCW 41.26 in administering the pension and disability program, and must conduct its proceedings in accordance with RCW 34.04, the administrative procedure act. RCW 41.26.115(1). It has the responsibility to determine the eligibility of individual police officers for disability retirement benefits, RCW 41.20.060, and in making this determination it has the power to compel the attendance and testimony of witnesses, RCW 41.20.040(1), and is required to enter written decisions accompanied by findings of fact and conclusions of law, RCW 41.26.120(2). Its decisions are appealable first to the director of the Department of Retirement Systems, and then to the appropriate superior court. RCW 41.26.200, .220.

The public policy requiring absolute immunity is well stated in *Sellars v. Procunier,* at 1299–1300:

the proper functioning and indeed the very survival of any independent, dispute–resolving system requires that the dread of subsequent lawsuits be prevented from becoming a factor in a judge's assessment of the merits of a case. Moreover, the judge's time which would be diverted to contesting such litigation could severely constrict the time available for the performance of his or her primary duties. Absolute immunity, as the Supreme Court has acknowledged, leaves the genuinely wronged

person without civil redress. However, broader societal concerns dictate that the balance be struck in favor of freeing judges from the constant fear of retaliatory suits. The alternative of qualified immunity, or no immunity at all, would disserve the public interest, because these officials would still be subject in some degree to vexatious litigation.

(Footnote omitted.)

When considering the applications for disability and retirement benefits, the Police Pension Board's work is functionally comparable to that of a judge; therefore, it is immune from suit. This decision makes it unnecessary to consider appellants' other assignments of error.

Affirmed.

CORBETT, C.J., and SWANSON, J., concur.

Review denied by Supreme Court January 24, 1986.